UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| RAVI S. RAMANATHAN, as Trustee of the Ramanathan Family Trust,<br><br>  Plaintiff<br><br>v.<br><br>THE BANK OF NEW YORK MELLON, as Trustee for CWABS, Inc. Asset Backed Certificates, Series 2005-4,<br><br>  Defendant | Case No.: 2:19-cv-02009-APG-EJY<br><br>**Order Granting in Part Defendant's Motion for Summary Judgment and Granting in Part Plaintiff's Motion for Summary Judgment**<br><br>[ECF Nos. 33, 35] |

Plaintiff Ravi Ramanathan, as trustee for the Ramanathan Family Trust, sues The Bank of New York Mellon (BONY) for declaratory relief and to quiet title to property located at 1224 Hickory Grove Circle in North Las Vegas. BONY is the beneficiary of the deed of trust encumbering the property. BONY counterclaims for declaratory relief, to quiet title, to judicially foreclose, and to recover for unjust enrichment.

The parties move for summary judgment. The crux of the parties' dispute is whether the deed of trust has been terminated under Nevada Revised Statutes § 106.240. Ramanathan contends it has been terminated because more than ten years have passed since the lender accelerated the loan that the deed of trust secures. BONY contends it has not been terminated because the lender never accelerated the debt within the meaning of § 106.240.

I grant BONY's motion and deny Ramanathan's motion on the parties' competing quiet title and declaratory relief claims because the deed of trust was not extinguished by operation of § 106.240. I grant Ramanathan's motion for summary judgment on BONY's judicial foreclosure claim because this claim is barred by the statute of limitations. Finally, I grant Ramanathan's

motion for summary judgment on BONY's unjust enrichment claim because unjust enrichment is not an available theory of recovery where, as here, a written contract exists.

**I. BACKGROUND**

In 2005, Ravi and Meenatchi Ramanathan obtained a $184,000 loan secured by a deed of trust on property. ECF Nos. 35-3; 35-5.  In July 2007, they transferred the property to the Ramanathan Family Trust. ECF No. 35-6.  BONY is the holder of the note and beneficiary of the deed of trust.[1] ECF Nos. 33-16 at 17; 35-7; 35-8.

The loan went into default on December 1, 2008 and no payments have been made since. ECF No. 33-16 at 23.  On December 30, 2008, the Ramanathans filed for bankruptcy. ECF No. 34-5.  The property was included in their bankruptcy schedules, and the note was identified as a secured claim. *Id.* at 13, 22.  On January 2, 2009, BONY's servicer sent the Ramanathans a notice of intent to accelerate. ECF No. 33-20.  That notice stated that the loan was in default, that the borrowers had the right to cure the default, and that they had until February 1, 2009 to do so. *Id.*  The notice also stated that if the default was not timely cured, "the mortgage payments **will be accelerated** with the full amount remaining accelerated and becoming due and payable in full, and foreclosure proceedings will be initiated at that time." *Id.* (emphasis in original).  The Ramanathans did not cure the default and the servicer took no further action to foreclose because the bankruptcy case was active at that time. ECF No. 33-16 at 24-25.

The bankruptcy court discharged the Ramanathans from bankruptcy on April 16, 2009. ECF No. 33-6.  In September 2009, BONY's servicer on the loan moved for relief from the automatic bankruptcy stay. ECF Nos. 33-16 at 26; 33-7.  In both the motion and a supporting

---

[1] Ramanathan concedes that BONY is the beneficiary. ECF No. 36 at 9.

declaration, the servicer indicated an intent to foreclose on the property if the stay was lifted. ECF Nos. 33-7 at 2, 4 (stating that the servicer "has elected to initiate foreclosure proceedings on the subject property" but has been "precluded from proceeding to publish the necessary notices and commencing said foreclosure action" due to the automatic stay); 33-8 at 5 (same).  The bankruptcy court granted the motion and lifted the automatic stay on October 15, 2009. ECF No. 33-9.  The bankruptcy case was closed on February 22, 2012. ECF No. 33-13.  At no time thereafter did BONY initiate foreclosure until it filed its counterclaim for judicial foreclosure in this case in May 2020. ECF Nos. 24; 33-16 at 27, 30.

## II. ANALYSIS

Summary judgment is appropriate if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The burden then shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018) ("To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial.").  I view the evidence and reasonable inferences in the light most favorable to the non-moving party. *Zetwick v. Cnty. of Yolo*, 850 F.3d 436, 440-41 (9th Cir. 2017).

### A. Quiet Title/Declaratory Relief

The parties dispute whether the deed of trust was accelerated automatically by (1) the filing of the bankruptcy petition, (2) the debtors' discharge from bankruptcy, or (3) the notice of intent to accelerate combined with the motion for relief from the automatic stay. BONY argues that none of these triggered the ten-year period under § 106.240 because the statute refers to when the debt becomes wholly due according to the terms of the deed of trust, and the deed of trust does not provide for automatic acceleration upon the borrower filing for bankruptcy. BONY thus seeks a declaration that it is the beneficiary under the deed of trust and that the deed of trust still encumbers the property. Ramanathan argues that each event accelerated the debt, but, at the latest, the motion to lift stay did so. Ramanathan thus requests judgment in its favor quieting title with a declaration that the deed of trust has terminated by operation of law.

Alternatively, Ramanathan argues that BONY's counterclaims for declaratory relief and to quiet title are untimely because BONY did not bring them within four years of the bankruptcy court granting relief from the automatic stay. Ramanathan argues BONY knew at that time that Ramanathan was still the record owner of the property post-bankruptcy, so it should have brought these claims earlier. BONY responds that its counterclaims are timely because either no statute of limitations applies, or the limitation period was not triggered until Ramanathan filed this action.

#### 1. Timeliness

A lienholder seeking to determine whether its deed of trust has been extinguished has four years to bring a claim to determine adverse interests in property under Nevada Revised Statutes § 40.010. *Cf. Bank of New York for Certificateholders of CWALT, Inc. v. S. Highlands Cmty. Ass'n*, 329 F. Supp. 3d 1208, 1213-14 (D. Nev. 2018) (citing Nevada Revised Statutes

§ 11.220, the four-year catchall limitation period). Generally, a cause of action accrues when the plaintiff (or in this case, the counterclaimant) knew or should have known through the exercise of due diligence the facts constituting the elements of the claim. *Bemis v. Estate of Bemis*, 967 P.2d 437, 440 (Nev. 1998).

Here, there is no evidence that BONY knew or should have known that anyone challenged the validity of the deed of trust until Ramanathan brought this suit in 2019. The mere fact that Ramanathan remained the property's owner of record did not put BONY on notice that Ramanathan challenged the deed of trust's validity following the bankruptcy proceedings. To the contrary, BONY's servicer had obtained an order lifting the bankruptcy stay so BONY could pursue its remedies under the deed of trust. Moreover, by Ramanathan's own argument, the deed of trust was extinguished under § 106.240 in December 2018 at the earliest. *See* ECF No. 33 at 3, 10. BONY first asserted its quiet title and declaratory relief counterclaims less than two years later in February 2020. ECF No. 15. Consequently, these counterclaims are timely.

2. Merits

The parties do not dispute the facts, only their legal significance. Accordingly, the question of whether the deed of trust has been extinguished is a question of law appropriate for summary adjudication.

Nevada Revised Statutes § 106.240 provides:

> The lien heretofore or hereafter created of any mortgage or deed of trust upon any real property, appearing of record, and not otherwise satisfied and discharged of record, shall at the expiration of 10 years after the debt secured by the mortgage or deed of trust according to the terms thereof or any recorded written extension thereof become wholly due, terminate, and it shall be conclusively presumed that the debt has been regularly satisfied and the lien discharged.

This statute "creates a conclusive presumption that a lien on real property is extinguished ten years after the debt becomes due." *Pro-Max Corp. v. Feenstra*, 16 P.3d 1074, 1077 (Nev. 2001), *opinion reinstated on reh'g* (Jan. 31, 2001).

The Supreme Court of Nevada has not directly addressed what the statute means by the debt becoming "wholly due."[2] But that court has suggested that it means when the debt is "due in full," which includes "'the lender exercis[ing] his or her option to declare the entire note due.'" *First Am. Title Ins. Co. v. Coit*, No. 70860, 412 P.3d 1088, 2018 WL 1129810, at *1 n.1 (Nev. Feb. 26, 2018) (quoting *Clayton v. Gardner*, 813 P.2d 997, 999 (Nev. 1991) ("[W]here contract obligations are payable by installments, the limitations statute begins to run only with respect to each installment when due, unless the lender exercises his or her option to declare the entire note due." (emphasis omitted))). "That would include not only the ultimate maturity date, but also a sooner date if the lender accelerates the debt and declares the entire debt due. The statute's plain language supports this interpretation." *Bank of Am., N.A. v. Estrella II Homeowners Ass'n*, No. 2:16-cv-02835-APG-DJA, 2020 WL 4194004, at *2 (D. Nev. July 21, 2020). "It is also consistent with Nevada law that recognizes a lender's ability to accelerate and decelerate debts." *Id.* (citing *Clayton*, 813 P.2d at 999; *Cadle Co. II v. Fountain*, No. 49488, 281 P.3d 1158, 2009 WL 1470032 (Nev. Feb. 26, 2009)). "[A]n acceleration [must] be exercised in a manner so clear and unequivocal that it leaves no doubt as to the lender's intention . . . ." *Clayton*, 813 P.2d at 999 (quotation omitted).

---

[2] Because the Supreme Court of Nevada has not addressed what it means for the debt to become wholly due, including whether that can occur through automatic acceleration from the filing of a bankruptcy petition, bankruptcy discharge, or a secured creditor's motion to lift stay, I must predict how that court would decide these questions. *Orkin v. Taylor*, 487 F.3d 734, 741 (9th Cir. 2007). I may use "decisions from other jurisdictions, statutes, treatises, and restatements as guidance." *Assurance Co. of Am. v. Wall & Assocs. LLC of Olympia*, 379 F.3d 557, 560 (9th Cir. 2004) (quotation omitted).

6

For the debt to become wholly due within § 106.240's meaning, it must be "according to the terms thereof." In other words, the debt must be wholly due by the terms of the original maturity date or because the lender has accelerated the debt according to the terms of the parties' agreement. Consequently, although a bankruptcy petition accelerates debts for purposes of a bankruptcy proceeding,[3] it does not necessarily do so for purposes of § 106.240. *See Greenhouse Patio Apartments v. Aetna Life Ins. Co.*, 868 F.2d 153, 156 (5th Cir. 1989) (stating that a creditor filing a proof of claim on unmatured amounts "does not cause acceleration"). Likewise, although the bankruptcy discharge relieved the debtors of personal liability on the debt, that happened by operation of the bankruptcy proceeding, not by the lender's option to accelerate under the terms of the note and deed of trust.

The note and deed of trust do not provide for automatic acceleration upon the borrower filing for bankruptcy or being discharged in bankruptcy. Instead, both refer to acceleration being an optional remedy for the lender. The note states that if the borrower defaults on a payment, the lender "may send [Borrower] a written notice telling [Borrower] that if [Borrower does] not pay the overdue amount by a certain date, the [Lender] may require [Borrower] to pay immediately the full amount of Principal which has not been paid and all the interest that [Borrower] owe[s] on that amount." ECF No. 35-3 at 4. "If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration." *Id.* at 5. This notice must give 30 days for the borrower to pay the sums due. *Id.* If the borrower fails to timely pay the amount due, "Lender may invoke any remedies permitted by [the deed of trust] without further

---

[3] *See, e.g.*, *In re Manville Forest Prods. Corp.*, 43 B.R. 293, 297-98 (Bankr. S.D.N.Y. 1984), *aff'd in part, rev'd in part*, 60 B.R. 403 (S.D.N.Y. 1986) ("It is a basic tenet of the Bankruptcy Code that [b]ankruptcy operates as the acceleration of the principal amount of all claims against the debtor" due to the "expansive" definition of a "claim" in bankruptcy to include contingent and unmatured claims (quotations omitted)).

7

notice or demand on Borrower." *Id.*  The note also states that the deed of trust "describes how and under what conditions [Borrower] may be required to make immediate payment in full of all amounts [Borrower] owe[s] under this Note." *Id.* at 4.

The deed of trust, in turn, provides:

> Lender shall give notice to Borrower prior to acceleration following Borrower's [default].  The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to the Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by [the deed of trust] and sale of the Property. . . .  If the default is not cured on or before the date specified in the notice, Lender at its option, and without further demand, may invoke the power of sale, including the right to accelerate full payment of the Note, and any other remedies permitted by Applicable Law. . . .
>
> If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold, and shall cause such notice to be recorded in each county in which any part of the Property is located. . . .

ECF No. 35-5 at 14.

The fact that BONY's servicer issued the notice of intent to accelerate and then requested the bankruptcy court to lift the stay so it could foreclose also did not make the debt "wholly due" for purposes of § 106.240.  The plaintiff concedes that the notice of intent to accelerate did not accelerate the debt. ECF No. 33 at 11 & n.11.  The motion to lift stay and supporting declaration also did not accelerate the debt because the motion was filed so that BONY could overcome the hurdle of the automatic stay to then exercise its rights under the terms of the note and deed of trust.  As BONY stated in its motion to lift stay, it could not proceed with invoking the power of sale by recording a notice of default and election to sell because of the automatic stay. ECF No. 33-7 at 2, 4 (stating that BONY sought a lift of the stay so it could "commence and continue all acts necessary to foreclose under the Deed of Trust" and that it was presently "precluded from

proceeding to publish the necessary notices and commencing said foreclosure" due to the automatic stay). Thus, BONY was indicating its intent to take steps to invoke the power of sale, including acceleration, in accordance with the note and deed of trust after the stay was lifted. Stating its future intent to invoke an optional remedy is not sufficiently clear and unequivocal that it leaves no doubt BONY had accelerated the debt as of the time of its motion. Indeed, after the stay was lifted, BONY would have been required to comply with the terms of the note and deed of trust to invoke the power of sale, including accelerating the debt, by recording a notice of default and election to sell. BONY never did, so it never accelerated the debt according to the terms of the note and deed of trust. The cases on which the plaintiff relies do not persuade me that the Supreme Court of Nevada would hold that a secured creditor accelerates the debt for purposes of § 106.240 by requesting the bankruptcy court lift the stay to allow the creditor to foreclose.[4]

      I therefore grant BONY's motion for summary judgment and deny the plaintiff's motion on the parties' competing claims and counterclaims to quiet title and for declaratory relief. Consequently, I declare that the deed of trust for which BONY is the beneficiary has not been extinguished by operation of Nevada Revised Statutes § 106.240.

      **B. Judicial Foreclosure**

      BONY seeks to judicially foreclose on the property because the deed of trust has not been extinguished and the loan is in default. Ramanathan responds by reiterating the argument that the deed of trust has been extinguished. Alternatively, Ramanathan contends that the judicial

---

[4] *See Matter of LHD Realty Corp.*, 726 F.2d 327, 330-31 (7th Cir. 1984) (concluding that a lender had accelerated a debt and thereby waived the contractual right to a prepayment penalty by requesting the bankruptcy court lift the stay); *In re Skyler Ridge*, 80 B.R. 500, 507-08 (Bankr. C.D. Cal. 1987) (recognizing that there is "automatic acceleration of a debt upon the filing of a bankruptcy case" but noting that does not automatically accelerate the debt for all purposes).

foreclosure claim is untimely because BONY did not assert the claim within six years of the bankruptcy court lifting the automatic stay. Ramanathan argues that the claim accrued when the debtors were discharged in April 2009 because monthly payments were no longer due. BONY responds that because the note and deed of trust form an installment contract, the limitation period runs from each missed payment until BONY accelerated the debt by filing the counterclaim in this case, so its claim is timely.

BONY's judicial foreclosure claim is untimely. The limitation period for a judicial foreclosure is six years. *Facklam v. HSBC Bank USA for Deutsche ALT-A Sec. Mortg. Loan Tr.*, 401 P.3d 1068, 1071 (Nev. 2017) (en banc) (citing Nev. Rev. Stat. § 11.190(1)(b) as the limitation period for an action on a written contract). When the debtors were discharged in April 2009, BONY knew or should have known that it would not be able to recover additional payments or a deficiency judgment from the debtors and that its only remedy was to resort to its security interest in the property. At that point, BONY knew or should have known that it had six years to pursue a judicial foreclosure based on a breach of the note and deed of trust. BONY's judicial foreclosure claim thus accrued in April 2009 (when the debtors were discharged), or at the latest in October 2009 (when the bankruptcy court lifted the stay). *See Jarvis v. Fed. Nat'l Mortg. Ass'n*, 726 F. App'x 666, 667 (9th Cir. 2018) (applying Washington law to conclude that the statute of limitations began to run from the date of the last installment due before the debtor's discharge of personal liability on an installment contract). BONY did not assert its counterclaim for judicial foreclosure until it filed its amended counterclaim in this case in May 2020. ECF No.

24. BONY's judicial foreclosure claim is therefore time barred as a matter of law.[5] As a result, I grant the plaintiff's motion for summary judgment and deny BONY's motion as to this claim.

### D. Unjust Enrichment

BONY does not move for summary judgment on this claim, but Ramanathan does. Ramanathan argues that BONY cannot assert an unjust enrichment claim where there is an express contract between the parties. Alternatively, Ramanathan contends this claim is untimely because it was not brought within four years of the debtors' discharge in April 2009, or from October 2009 when the bankruptcy court lifted the automatic stay.

BONY did not respond to the motion for summary judgment on this claim. BONY therefore has not pointed to evidence or presented legal argument as to why it should be able to assert an unjust enrichment claim where the parties have a written contract. *See Leasepartners Corp. v. Robert L. Brooks Tr. Dated Nov. 12, 1975*, 942 P.2d 182, 187 (Nev. 1997) ("An action based on a theory of unjust enrichment is not available when there is an express, written contract, because no agreement can be implied when there is an express agreement."). Consequently, I grant Ramanathan's motion for summary judgment on BONY's unjust enrichment claim.

## III. CONCLUSION

I THEREFORE ORDER that plaintiff Ravi S. Ramanathan's motion for summary judgment **(ECF No. 33) is GRANTED in part**. The motion is granted as to defendant The Bank of New York Mellon's claims for judicial foreclosure and unjust enrichment. The motion is denied in all other respects.

---

[5] However, my ruling does not mean that BONY is precluded from pursuing a non-judicial foreclosure because "statutes of limitations only apply to judicial actions, and a nonjudicial foreclosure by its very nature is not a judicial action." *Facklam*, 401 P.3d at 1069.

I FURTHER ORDER that defendant The Bank of New York Mellon's motion for summary judgment **(ECF No. 35) is GRANTED in part**. The motion is denied as to The Bank of New York Mellon's judicial foreclosure claim. The motion is granted as to The Bank of New York Mellon's counterclaims and Ramanathan's claims for quiet title and declaratory relief as follows:

I declare that the deed of trust encumbering the property located at 1224 Hickory Grove Circle in North Las Vegas, Nevada, for which The Bank of New York Mellon, as Trustee for CWABS, Inc. Asset Backed Certificates, Series 2005-4 is the beneficiary, has not been extinguished by operation of Nevada Revised Statutes § 106.240.

I FURTHER ORDER the clerk of court to enter judgment accordingly and to close this case.

DATED this 30th day of September, 2021.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE